**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

JEFFREY TODD EASTMAN,

Plaintiff,

v.

ROBERT B. WESTBROOK, et al.,

Defendants.

Case No.: 1:21-cv-00797-NONE-SAB (PC)

FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF THE ACTION

(ECF No. 16)

Plaintiff Jeffrey Todd Eastman is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff filed the instant action on May 17, 2021. On July 21, 2021, the Court screened Plaintiff complaint, found that no cognizable claims were stated, and granted Plaintiff thirty days to file an amended complaint. (ECF No. 9.) Plaintiff failed to file an amended complaint, and on August 30, 2021, the Court ordered Plaintiff to show cause within fourteen days why the action should not be dismissed. (ECF No. 10.) After Plaintiff failed to respond to the order to show cause, the Court issued Findings and Recommendations to dismiss the action on September 27, 2021. (ECF No. 12.) On October 12, 2021, Plaintiff filed a response. (ECF No. 13.) Plaintiff claimed that due to lack of funds, stationary material, postage, paper, envelopes and pens he was unable to comply with court's deadlines. (Id.) Accordingly, on October 15, 2021, the Court vacated the Findings and Recommendations and granted Plaintiff thirty days to file an amended complaint. (ECF No. 14.)

Plaintiff failed to respond to the Court's October 15, 2021. Therefore, on November 29, 2021, the Court ordered Plaintiff to show cause within fourteen days why the action should not be dismissed. (ECF No. 16.) Plaintiff has failed to respond to the order to show cause and the time to do so has passed. Thus, dismissal of the action is warranted.

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

///

///

## II.

## SUMMARY OF ALLEGATIONS

The Court accepts Plaintiff's allegations in his complaint as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

On August 21, 2020, Plaintiff filed a writ of habeas corpus in the Stanislaus County Superior Court. In the writ, Plaintiff provided full facts and proof that due to the outbreak of Covid-19 in the jail and his acute immune disorder, he was at a higher risk of injury and death. Plaintiff submitted supporting medical documents to support his fears and concerns, along with the fact that the contagion has spread rapidly throughout the quarters of the housing unit to which he was assigned. Plaintiff had requested to be released to a family member's house or placed in a hotel as a more reasonable safety accommodation. Plaintiff's petition was blatantly ignored at the personal agenda of the judge as he procrastinated for six months to answer the petition for order to show cause and gave several excuses why he had not. Then, in the middle of a jury trial (April 2021) the contagion spread again in Plaintiff's housing unit. Instead of considering Plaintiff's original request for release, Plaintiff was moved to the hospital unit where other who tested positive were housed. The trial was postponed and Plaintiff's habeas corpus was denied on May 5, 2021, stating a defendant may not file a petition of habeas corpus in propria persona and he failed to submit evidence in support of the petition. Plaintiff was not able to shower safety because those who were infected used the same one. Plaintiff was left in imminent danger.

Wellpath medical lied by stating in an official letter that Plaintiff had not told them about his immune disorder when he was first incarcerated at the Public Safety Center. However, Plaintiff's medical records will show that on July 26, 2018 (ten days after he was booked) he told Wellpath medical staff Coletle Zelaya about his immune disorder several months before the outbreak of Covid-19 in the facility. To support the informal response of county counsel and district attorney, Wellpath claimed that they had the contagion under control and that Plaintiff was in no danger. However, they disregarded and ignored Plaintiff's inquiry in which he asked if they could prevent another onset of his immune disorder in light of the Covid-19 virus-similar to the virus which almost killed him in 2014. Wellpath medical could not and cannot help nor prevent Covid-19 from setting off his immune disorder and killing

him. Plaintiff cannot take the vaccination. Wellpath lied to the courts indicating they could take care of the imminent danger.

Plaintiff is now in the H-unit hospital of the facility where everyone has contracted the contagion Covid-19. There is no safe place for Plaintiff to be housed in the facility because the virus is everywhere.

Plaintiff requested to be released to the safety and security of his family or friend's home in order to continue securely in his ongoing case. While others were being specifically selected to be released on their own recognizance. Plaintiff's pre-medical immune disorder was not taken into consideration. Plaintiff was ignored, his petition was disregarded and delay for an unreasonable amount of time which denied his constitutional right to file the petition in propria persona. Plaintiff has been left exposed to the imminent threat of the virus at the facility, and he has developed extreme fear, despair, lack of confidence, mental pain, excessive worry, excessive sleeping, weariness, weight gain, and extreme nervousness.

At one point, lieutenant Clifton interfered with Plaintiff's direct grievance to Wellpath medical (grievance dated May 15, 2020), and Plaintiff never received a reply from Wellpath because Clifton obstructed Plaintiff's right to the grievance process and medical inquiry.

## III.

## DISCUSSION

### A. Judicial Immunity

Absolute judicial immunity is afforded to judges for acts performed by the judge that relate to the judicial process. In re Castillo, 297 F.3d 940, 947 (9th Cir. 2002), as amended (Sept. 6, 2002). "This immunity reflects the long-standing 'general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' " Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004) (quoting Bradley v. Fisher, 13 Wall. 335, 347 (1871)).

This judicial immunity insulates judges from suits brought under section 1983. Olsen, 363 F.3d at 923. Absolute judicial immunity insulates the judge from actions for damages due to judicial acts taken within the jurisdiction of the judge's court. Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir.

1986). "Judicial immunity applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.' " Id. (quoting Cleavinger v. Saxner, 474 U.S. 193 (1985)). However, a judge is not immune where he acts in the clear absence of jurisdiction or for acts that are not judicial in nature. Ashelman, 793 F.2d at 1075. Judicial conduct falls within "clear absence of all jurisdiction," where the judge "acted with clear lack of all subject matter jurisdiction." Stone v. Baum, 409 F.Supp.2d 1164, 1174 (D. Ariz. 2005).

To determine if an act is judicial in nature, the court considers whether (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity. Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1133 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001) (quoting Meek v. County of Riverside, 183 F.3d 962, 967 (9th Cir. 1999)).

Here, Plaintiff alleges that Judge Westbrook delayed ruling and wrongfully denied his petition for writ of habeas corpus. A judicial decision on a petition for writ of habeas corpus filed in the Stanislaus County Superior Court is clearly within the normal judicial functions of the judicial officer. As the judicial officer presiding over the petition, Judge Westbrook is entitled to absolute judicial immunity from damages for his findings made during the hearing. Plaintiff cannot state a claim against Judge Westbrook related to the circumstances and decision in denying his petition for writ of habeas corpus.

**B. Monell Claim**

A municipality cannot be held liable under § 1983 for the actions of its employees under the theory of *respondeat superior*. See Monell v. Dep't of Social Servs., 436 U.S. at 691; Velazquez v. City of Long Beach, 793 F.3d 1010, 1027 (9th Cir. 2015). A municipality can only be held liable for injuries caused by the execution of its policy or custom whether made "by its lawmakers or those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 694. Municipal liability under Monell may be premised on: (1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who

was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. See Thomas v. County of Riverside, 763 F.3d 1167, 1170 (9th Cir. 2014); Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008). "A policy can be one of action or inaction," Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006), and can be formal or informal. See City of St. Louis v. Praprotnik, 485 U.S. 112, 131 (1988).

A longstanding practice or custom is one that is so "persistent and widespread" that it constitutes a "permanent and well settled" governmental policy. Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Id. The line between "isolated or sporadic incidents" and "persistent and widespread conduct" is not clearly delineated, although where more than a few incidents are alleged, the determination appears to require a fully-developed factual record. Compare Davis v. City of Ellensburg, 869 F.2d 1230, 1233-34 (9th Cir. 1989) (single incident of excessive force inadequate to establish liability), Meehan v. County of Los Angeles, 856 F.2d 102, 107 (9th Cir. 1988) (two incidents insufficient), with Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005) (triable issue of fact existed as to whether Seattle had an unconstitutional policy or custom of suppressing certain political speech based on the testimony of several individuals that their entry to a particular area was permitted by police only after they removed offending buttons and stickers, coupled with the testimony of the officer in charge that the City would not permit "demonstrations" in the area); see also Jarbo v. County of Orange, No. SACV 05-00202-JVS, 2010 WL 3584440, *9-*13 (C.D. Cal. Aug. 30, 2010) (reviewing circumstances in which Monell custom/practice claims were permitted past summary judgment).

Thus, generally, a plaintiff must show the following: (1) he was deprived of a constitutional right; (2) the defendant had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. See Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir.

2011) (internal quotation marks and citations omitted); Mabe v. San Bernardino County, 237 F.3d 1101, 1110-11 (9th Cir. 2001). The standard for deliberate indifference for a governmental entity is an objective one. See Castro v. County of Los Angeles, 833 F.3d 1060, 1076 (9th Cir. 2016).

Here, Plaintiff has failed to allege that a specific official policy of the Stanislaus County Jail amounted to deliberate indifference. Accordingly, Plaintiff's municipality claim fails to give rise to a claim for relief.

**C. Exposure to COVID-19**

Because Plaintiff challenges the conditions of his confinement at the Stanislaus County Jail, his deliberate indifference claim "arises under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause." See Gordon v. County of Orange, 888 F.3d 1118, 1124 (9th Cir. 2018). To succeed on their Fourteenth Amendment claim, plaintiffs will have to prove objective deliberate indifference. Gordon, 888 F.3d at 1124–25 (holding that "claims or violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard").

To satisfy this objective deliberate indifference standard, plaintiff must prove that:

> (i)the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Id. at 1125. As to the third element, the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." Id.

As an initial matter, Plaintiff's request that he be released from custody must be dismissed because it cannot be pursued in this civil rights action even if he stated a plausible claim. See Nettles v. Grounds, 830 F.3d 922, 927-28 (9th Cir. 2016) ("Although "the literal terms of § 1983 might seem to cover" claims that a prisoner's confinement violated the Constitution, … the language of the habeas statute is more specific, and the writ's history makes clear that it traditionally "has been accepted as

the specific instrument to obtain release from [unlawful] confinement.") (quoting Preiser v. Rodriguez, 411 U.S. 475, 486, 489 (1973)).

Furthermore, Plaintiff fails to state a cognizable claim for relief. Plaintiff's bare allegations as to the existence of the global pandemic, the prevalence of coronavirus within the Stanislaus County Jail, his immune disorder, and his understandable desire to avoid contracting the virus simply are not enough to state a cognizable constitutional violation. Plaintiff's general allegations are insufficient to state a cognizable Fourteenth Amendment claim. To present a cognizable claim, Plaintiff must identify defendant's challenged conduct, explain how that conduct is unreasonable under the circumstances, and describe how defendant's conduct has harmed plaintiff. "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff alleges no facts against a properly named defendant that suggest the defendant made an intentional decision with respect to the conditions under which the Plaintiff was confined, which put Plaintiff at substantial risk of suffering serious harm, that the defendant did not take reasonable available measures to abate that risk and that Plaintiff was harmed.

Because Plaintiff is proceeding without counsel and it is not "absolutely clear that the deficiencies of [his] complaint could not be cured by amendment," the Court will grant him leave to fix them, if he can. See Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (" 'Before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively.' ") (quoting Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)).

**D. Inmate Appeal Process**

The Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. at 221. Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)

(citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Similarly, Plaintiff may not impose liability on a defendant simply because he or she played a role in processing or responding to Plaintiff's inmate appeals. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (because an administrative appeal process is only a procedural right, no substantive right is conferred, no due process protections arise, and the "failure to process any of Buckley's grievances, without more, is not actionable under section 1983."). Therefore, Plaintiff cannot seek liability against any Defendant for his/her involvement in reviewing and denying his inmate appeals.

**IV.**

**FAILURE TO OBEY COURT ORDER AND FAILURE TO PROSECUTE**

Here, the Court screened Plaintiff's complaint, and on July 21, 2021, an order issued providing Plaintiff with the legal standards that applied to his claims, advising him of the deficiencies that needed to be corrected, and granting him leave to file an amended complaint within thirty days. (ECF No. 9.) On October 15, 2021, the Court granted Plaintiff thirty days to file an amended complaint. (ECF No. 14.) Plaintiff did not file an amended complaint or otherwise respond to the Court's October 15, 2021 order. Therefore, on November 29, 2021, the Court ordered Plaintiff to show cause within fourteen (14) days why the action should not be dismissed. (ECF No. 15.) Plaintiff failed to respond to the November 29, 2021 order.

Local Rule 110 provides that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." The Court has the inherent power to control its docket and may, in the exercise of that power, impose sanctions where appropriate, including dismissal of the action. Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000).

A court may dismiss an action based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. See, e.g. Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order to file an amended complaint); Carey v. King, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (dismissal for failure to comply with local rule requiring pro se plaintiffs to keep court apprised of address); Malone v. United States Postal Serv., 833 F.2d 128,

130 (9th Cir. 1987) (dismissal for failure to comply with court order); Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for lack of prosecution and failure to comply with local rules).

"In determining whether to dismiss an action for lack of prosecution, the district court is required to consider several factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.' " Carey, 856 F.2d at 1440 (quoting Henderson, 779 F.2d at 1423). These factors guide a court in deciding what to do, and are not conditions that must be met in order for a court to take action. In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted).

In this instance, the public's interest in expeditious resolution of the litigation and the Court's need to manage its docket weigh in favor of dismissal. In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d at 1226. Plaintiff was ordered to file an amended complaint within thirty days of October 15, 2021 and has not done so. Accordingly, the operative pleading is the July 21, 2021 complaint which has been found not to state a cognizable claim. Plaintiff's failure to comply with the order of the Court by filing an amended complaint hinders the Court's ability to move this action towards disposition. This action can proceed no further without Plaintiff's compliance with the order and his failure to comply indicates that Plaintiff does not intend to diligently litigate this action.

Since it appears that Plaintiff does not intend to litigate this action diligently there arises a rebuttable presumption of prejudice to the defendants in this action. In re Eisen, 31 F.3d 1447, 1452-53 (9th Cir. 1994). The risk of prejudice to the defendants also weighs in favor of dismissal.

The public policy in favor of deciding cases on their merits is greatly outweighed by the factors in favor of dismissal. It is Plaintiff's responsibility to move this action forward. In order for this action to proceed, Plaintiff is required to file an amended complaint curing the deficiencies in the operative pleading. Despite being ordered to do so, Plaintiff did not file an amended complaint or respond to the order to show cause and this action cannot simply remain idle on the Court's docket, unprosecuted. In this instance, the fourth factor does not outweigh Plaintiff's failure to comply with the Court's orders. Finally, a court's warning to a party that their failure to obey the court's order will result in dismissal satisfies the "consideration of alternatives" requirement. Ferdik, 963 F.2d at 1262; Malone, 833 F.2d

at 132-33; Henderson, 779 F.2d at 1424. The Court's November 29, 2021, order to show cause expressly stated: "Failure to comply with this order will result in a recommendation for dismissal of the action for failure to state a cognizable claim for relief, failure to comply with a court order and failure to prosecute." (ECF No. 16.) Thus, Plaintiff had adequate warning that dismissal would result from his noncompliance with the Court's order.

**V.**

**RECOMMENDATION**

The Court has screened Plaintiff's complaint and found that it fails to state a cognizable claim. Plaintiff has failed to comply with the Court's order to file a first amended complaint or respond to the Court's order to show why the action should not be dismissed. In considering the factors to determine if this action should be dismissed, the Court finds that this action should be dismissed for Plaintiff's failure to state a cognizable claim, failure to obey the October 15, 2021 and November 29, 2021 orders, and failure to prosecute this action.

Accordingly, IT IS HEREBY RECOMMENDED that this action be DISMISSED for Plaintiff's failure to state a claim, failure to comply with a court order, and failure to prosecute.This Findings and Recommendation is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this Recommendation, Plaintiff may file written objections to this findings and recommendation with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The district judge will review the magistrate judge's Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 4, 2022**

UNITED STATES MAGISTRATE JUDGE